UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ALLSTATE INSURANCE COMPANY,

Plaintiff,

v.                    409CV011

MARY E. HARKLEROAD, LESTER A. CLAXTON, SR., LESTER A. CLAXTON, JR., GENERAL CASUALTY COMPANY OF WISCONSIN f/k/a SOUTHERN GUARANTY INSURANCE COMPANY OF GEORGIA,

Defendants.

ORDER

I. **INTRODUCTION**

Plaintiff Allstate Insurance Company ("Allstate") filed this declaratory judgment action seeking clarification as to its rights and obligations under two policies it issued to Defendants Lester A. Claxton, Sr. ("Claxton Sr."), and Lester A. Claxton, Jr. ("Claxton Jr.") (collectively, "the Claxtons"). The Claxtons are defendants in a separate action filed by Mary E. Harkleroad ("Harkleroad") (a co-defendant in this declaratory judgment case), wherein Harkleroad alleges that the Claxtons sold her a piece of property without informing her of past and/or present damage to the home due to wood decaying fungus. In response to Harkleroad's claims, the Claxtons demanded that Allstate provide coverage under the policies. Allstate, however, contends that there is no coverage under the policy because the alleged acts upon which Harkleroad's complaint is premised do not constitute "occurrence[s]" pursuant to the policies and also because several exclusions in the policy apply to the facts alleged. Although Allstate accepted the defense tendered by the Claxtons, it has reserved its rights under the policy.

Before the Court is Allstate's motion for summary judgment, by which it seeks a declaration that it does not owe the Claxtons a duty to defend or to indemnify on the claims alleged by Harkleroad. Doc. # 37.

II. **BACKGROUND**[1]

Claxton Sr. operates Claxton Rentals, LLC, and his son, Claxton Jr., operates Claxton Holdings, LLC and Claxton Townhomes, LLC. Doc. # 37-1 at 2. On January 26, 2004, the Claxtons purchased the property at issue in this case: a single residential home (hereinafter "the property" or "the house"). *Id.* The property was purchased "as is" as investment property for resale. *Id.* Prior to the closing, an exterminating company performed an inspection of the house and issued a report stating that the property had been treated for a Mediterranean termite infestation in June 2001, and also that there had been an infestation of wood decaying fungus on the sills, joists, and sub flooring of the house. Doc. # 40-2 at 17-19 (inspection report, filed as Exhibit 5 to Claxton Sr.'s deposition). At closing, however, the Claxtons executed a "Structural Inspection Waiver," which advised them of the availability of a structural inspection to show any structural damages in connection with the previous infestation of wood decaying fungus. Doc.

---

[1] A substantial part of the following factual recitation is derived from the assertions within Allstate's Statement of Material Facts, doc. # 37-1, that were not negated by Harkleroad or General Casualty Company of Wisconsin ("General Casualty") in their own responses. Some facts also come from Harkleroad's Complaint in the underlying action. *See Harkleroad v. Claxton, et. al*, case no. 408CV167 (S.D. Ga. filed 8/22/08).

# 37-1 at 3. By signing the waiver, the Claxtons elected not to require such an inspection as a condition of the closing and instead accepted the property "as is." *Id.*

Thereafter, the Claxtons began making improvements on the house in preparation for resale, including interior and exterior painting, landscaping, and repairs to the floorboards where water damage existed. *Id.* at 4. They put the house back on the market in March 2004. *Id.*

On March 15, 2004, Claxton Sr. executed a Seller's Property Disclosure Statement, in which he indicated that he had no "knowledge of any past or present damage to [the] [p]roperty caused by infiltration of pests, termites, dry-rot, or other wood-destroying organisms." *Id.* (citing disclosure statement, filed as Exhibit 7 to Claxton Sr.'s deposition). He also indicated that he was not "aware of any termite/pest control reports of treatments for the [p]roperty being done in the [previous] five years."[2] *Id.* In a deposition related to this litigation, he admitted that he failed to disclose his knowledge and/or awareness of the above-listed occurrences. Doc. # 40-1 at 30 (Claxton Sr. Deposition).

On May 12, 2004, Harkleroad received and executed the above-described Seller's Property Disclosure Statement. Doc. # 37-1 at 5. She then hired an inspection service to conduct an inspection of the property. *Id.* at 6. On June 9, 2004, Harkleroad closed on a contract to buy the property. *Id.* at 5.

Some two years later, Harkleroad undertook plans to remodel the house's kitchen. *Id.* at 6. During the early stages, however, she was informed of the existence of mold and rotten wood in the crawl space beneath the house, which caused the floorboards in the kitchen and bathroom to soften, and had also caused significant structural damage throughout the flooring of the house. *Id.* Harkleroad thereafter hired several inspectors and was ultimately informed that repairs would cost over $100,000. Doc. # 43-3 at 4.

As a result, on July 18, 2008, Harkleroad filed suit against the Claxtons, General Casualty, Standard Fire Insurance Company, and Don Rader Inspection Services in Chatham County State Court. Doc. # 37-1 at 7. That action has since been removed to the District Court for the Southern District of Georgia. *Id.* (*see Harkleroad v. Claxton, et. al,* case no. 408CV167). In her original and amended Complaint, Harkleroad alleges a total of four causes of action against the Claxtons. Doc. ## 1 at 71-79; 45 at 4-7. First, she alleges that the Claxtons breached their contractual duty to transfer the property in a good and marketable condition. Doc. # 1 at 74. Next, she alleges fraud as a result of the Claxtons' knowingly making "material misrepresentations to Harkleroad by failing to reveal and thereby concealing damages to the property ... with the intention and purpose of deceiving [her]." *Id.* at 75. Next, she claims that the Claxtons demonstrated "gross negligence [by] failing to reveal defects and damages." Doc. # 45 at 5. Finally, she claims that the Claxtons' alleged material misrepresentations (by failing to reveal the defects) were made "with the mental state of an entire want of care." *Id.* at 6. Additionally, she seeks punitive damages against the Claxtons, alleging that, "by intentionally concealing the substandard condition and damages to the property, [the Claxtons] acted in a fraudulent, intentional, willful and wanton

---

[2] In his deposition, Claxton Sr. testified that he fixed or repaired all structural issues identified during the renovation of the house, and, prior to the resale of the house, an inspection of the property was completed, with the property being "signed off on" as a result of that inspection. Doc. # 37-1 at 5 (citing doc. # 40 at 66, 68, 76, 95).

2

manner, [and demonstrated] an entire want of care." Doc. # 1 at 78.

At the time of the sale of the property to Harkleroad, the Claxtons were insured pursuant to an Allstate Landlords Package Policy and an Allstate Personal Umbrella Policy. Doc. # 37-1 at 8. Allstate accepted the defense tendered by the Claxtons pursuant to three separate Reservation of Rights letters. Doc. # 37-1 at 8.

Allstate thereafter brought this separate case seeking a declaratory judgment regarding its duty to "provide coverage, indemnification, or a defense" under the policies "for any loss or damage alleged to have been caused by the June 9, 2004 sale of the real property." Doc. # 1 at 13. Presently before the Court is Allstate's motion for summary judgment, doc. # 37, to which Harkleroad and General Casualty have filed responses, doc. ## 42, 43.[3] Allstate urges that it does not owe coverage to the Claxtons for the claims asserted by Harkleroad because none of the allegations constitute an "occurrence" under the policies, and also because certain exclusion provisions in the policy apply to the facts alleged.

### III. <u>STANDARDS & ANALYSIS</u>

#### A. Summary Judgment

"Insurance in Georgia is a matter of contract," *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (1996), and Georgia courts have long held that contract disputes are well-suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court. *Burns v. Reves*, 217 Ga. App. 316, 318 (1995); *see also* O.C.G.A. § 13-2-1 ("The construction of a contract is a question of law for the court. Where any [question] of fact is involved, the jury should [decide] the fact.").

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). Allstate presents numerous grounds for summary judgment as to its obligation to defend and indemnify the Claxtons in the separate suit filed by Harkleroad. Doc. # 37.

#### B. Duty to Defend

Two distinct issues are involved in this case: the duty to defend and the duty to indemnify. The Court must address the issues separately, however, as "[a]n insurer's duty to defend and its duty to indemnify are separate and independent obligations." *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 424 (2003) (citing *City of Atlanta v. St. Paul Fire & Ins. Co.*, 231 Ga. App. 206, 209 (1998)); *see also Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998) (acknowledging distinction between the two duties). However, if it is found that Allstate does not have a duty to defend on a claim, it will likewise not be required to indemnify the insureds if they are ultimately held liable for that claim.

The Court thus addresses the duty to defend first. The Georgia Court of Appeals has stated:

> [a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. We look to the allegations of the complaint to determine whether a claim covered by the policy is asserted. If the facts as

---
[3] The Claxtons have not made an appearance in this declaratory judgment case.

3

alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. However, as the Supreme Court held in *Great Am. Ins. Co.* [*v. McKemie*, 244 Ga. 84, 85-86], where the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit.

*Nationwide Mut. Fire Ins. Co.*, 264 Ga. App. at 424 (quoting *St. Paul Fire*, 231 Ga. App. at 207) (alterations omitted). The Court now reviews Harkleroad's allegations in light of the policy's provisions and exclusions.

### C. Factual Allegations

Harkleroad's Complaint and amendment thereto are by no means teeming with factual allegations. As far as underlying facts, she alleges that after buying the property, she discovered damage caused by and related to moisture, and that the Claxtons transferred the damaged property to her without revealing to her (and thereby concealing from her) the existing damage. Doc. ## 1 at 73-75; 45 at 4-6. She claims first that this constitutes a breach of the Claxtons' contractual duty to transfer the property in good and marketable condition. Doc. # 1 at 74. She additionally asserts three alternative theories of tort recovery, each involving a distinct factual allegation regarding the Claxtons' underlying state of mind: (1) fraud, due to intentional deception; (2) misrepresentation due to an entire want of care; and (3) misrepresentation due to gross negligence. Doc. ## 1 at 74-75; 45 at 5-6. Finally, in the event she is able to prove that, "by intentionally concealing the substandard condition and damages to the property, [the Claxtons] acted in a fraudulent, intentional, willful and wanton manner" and demonstrated "an entire want of care," she requests an award of punitive damages. Doc. # 1 at 78.

Since the filing of the Complaint (and amendments thereto), depositions and other discovery have revealed the additional information upon which this Order's factual background section, *supra*, Section II, is largely based. It has additionally been revealed that Claxton Sr. maintains that, although he and his son did misrepresent and otherwise fail to reveal the history of mold and termite issues in the house, he did not do so intentionally, but merely by "mistake." Doc. # 40-1 at 30.

The general rule is that "an insurer's duty to defend is premised upon the injured party's allegations in her complaint." *Se. Fire Ins. Co. v. Heard*, 626 F. Supp. 476, 477-78 (N.D. Ga. 1985) (citing *Haley v. Ga. Farm Bureau Mut. Ins. Co.*, 166 Ga. App. 596 (1983)). However, even "when the complaint on its face shows no coverage, [if] the insured notifies the insurer of factual contentions that would place the claim within the policy coverage" due consideration must be given to the insured's factual contentions. *Colonial Oil Indus. Inc. v. Underwriters Subscribing to Policy Nos. T031504670 & TO31504671*, 268 Ga. 561, 562 (1997). Thus, the Court will consider not only Harkleroad's allegations but also, where relevant, any factual allegations beyond the complaint.

### D. Policy Provisions and Exclusions

At the time of the real estate sale to Harkleroad, the Claxtons had two Allstate policies: a Landlords Package Policy ("Landlords Policy") and a Personal Umbrella Policy ("Umbrella Policy") that provided excess liability coverage.

#### *1. Coverage, Generally*

4

"As in any dispute over insurance coverage, the Court begins by examining the source of coverage itself – the general promises of coverage made in the insurance policy. If the general policy does not cover the claim in question, an inquiry into any applicable exclusions is unnecessary." *Macon Iron & Paper Stock Co., Inc. v. Transcon. Ins. Co.*, 93 F. Supp. 2d 1370, 1372 (M.D. Ga. 1999). Despite the Court's ultimate determination (below) that an exclusion provision in both policies applies to all of Harkleroad's allegations, the Court declines to simply bypass the threshold inquiry regarding whether the claims satisfy the policies' basic coverage provisions. Thus, the Court begins with the fundamental issue of coverage, and then proceeds to address the applicability of any exclusion provisions.

The Landlords Policy provides the following regarding losses covered:

> Subject to the terms, conditions and limitations of this policy, Allstate will pay compensatory damages which an injured person becomes legally obligated to pay because of bodily injury, personal injury, or property damage arising from a covered occurrence. We will not pay any punitive or exemplary damages, fines or penalties.

Doc. # 37-5 at 24 (copy of Landlords Policy). The definitions section of the policy defines "occurrence" as used above as "an accident during the policy period, including continued and repeated exposure to substantially the same harmful conditions during the policy period, resulting in bodily injury, personal injury or property damage arising from the ownership, maintenance or use of the residence premises." *Id.* at 5. "Property damage" is defined as "physical harm to or destruction of tangible property, including loss of its use resulting from such physical harm or destruction." *Id.*

Similarly, the Umbrella Policy provides that "Allstate will pay when an insured becomes legally obligated to pay for personal injury or property damage caused by an occurrence." Doc. # 37-6 at 16 (copy of Umbrella Policy). The definition section of the policy defines "occurrence" as "an accident or a continuous exposure to conditions[, including] personal injury and property damage caused by an insured while trying to protect persons or property from personal injury or property damage." *Id.* at 14-15. "Property damage" is defined as "physical injury to tangible property[, including] resulting loss of use." *Id.* at 15.

The policies require that, to constitute a covered "occurrence," Harkleroad's allegations must qualify as "an accident." *See* doc. ## 37-5 at 5; 37-6 at 14. Georgia courts define "accident" in the insurance coverage context as "an event which takes place without one's foresight or expectation or design." *O'Dell v. St. Paul Fire &c. Ins. Co.*, 223 Ga. App. 578. 580 (1996).

Three of Harkleroad's five claims cannot be – and indeed, are not – predicated upon facts constituting an occurrence under the policy, and, as a result, Allstate is under no duty to defend the Claxtons against them.

First, the very nature of a fraud claim precludes its classification as an occurrence. As the Georgia Court of Appeals has explained, "[a]ny damages resulting from intentional misrepresentations by defendants would not be caused by an occurrence," because "to be an occurrence the property damage resulting therefrom must be 'neither expected nor intended from the standpoint of the insured[,]'" and, "[i]n contrast[,] an action for fraud ... must be based upon a representation or concealment which was made with the intentions and purpose of

5

deceiving the opposite party and for the purpose of injuring him[, and i]n such cases knowledge of the falsehood constitutes an essential element and must be proven." *Haley*, 166 Ga. App. at 597; *see also Presidential Hotel v. Canal Ins.*, 188 Ga. App. 609, 611 (1988) (finding that a claim of fraud is an allegation of intentional conduct and, therefore, cannot be said that any resulting injury was unintended). For much the same reason, a misrepresentation with entire want of care would not constitute an occurrence. Typically, under Georgia law, "entire want of care" is used to describe the doing of an act in a way that "amount[s] to a disregard of the rights of the other party," *Tenn., Ala. & Ga. Ry. Co. v. Zugar*, 193 Ga. 386, 386 (1942), or in a way that "raise[s] the presumption of a conscious indifference" to the consequences, *S. Ry. Co. v. Davis*, 132 Ga. 812, 816 (1909). *See also Tecumseh Prods. Co. v. Rigdon*, 250 Ga. App. 739, 743 (2001) ("conscious indifference to consequences" relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights); *E-Z Serve Convenience Stores v. Crowell*, 244 Ga. App. 43, 45 (2000) ("reckless and wanton disregard of consequences" may evince an intention to inflict injury and is equivalent to an intentional tort). Thus, because, by definition, fraud and misrepresentation with entire want of care do not occur by accident and are not accidental in nature, those allegations do not qualify as occurrences under the policy, and Allstate is under no duty to defend (nor indemnify) the Claxtons against them.

It follows that, if the fraud and misrepresentation with an entire want of care claims are not covered, the punitive damages claim based upon those are likewise not covered. And, indeed, punitive damages are explicitly disclaimed in the coverage provision of the Landlords Policy. Doc. # 37-5 at 24 (copy of Landlords Package Policy) ("We will not pay any punitive or exemplary damages, fines or penalties."); *see Southern v. Sphere-Drake Ins. Co., Inc.*, 226 Ga. App. 450 (1997) (holding that punitive damages exclusion contained in bar's general liability policy precluded coverage for punitive damages sought by bar patrons who were injured in altercation with bar employees); *Nationwide Mut. Fire Ins. Co. v. Kim*, 294 Ga. App. 548, 554 (2008) (holding that an insurer can "expressly and specifically exclude punitive damages if it does not intend to provide coverage therefor"). For the foregoing reasons, Allstate is under no duty to defend on the punitive damages claim.[4]

Thus, only the "grossly negligent misrepresentation" and breach of contract[5]

---

[4] Moreover, for the same reasons discussed above (the intentional and/or conscious nature of fraud, entire want of care, and punitive damages claims), both policies' "intentional acts" exclusion provisions likewise remove any potential duty to defend or indemnify on these claims. *See* doc. ## 37-5 at 24 ("We do not cover bodily injury or property damage intended by, or which may be reasonably expected to result from the intentional or criminal acts or omissions of, an insured person."); 37-6 at 18-19 ("This policy will not apply ... to bodily injury or property damage resulting from ... an act or omission intended or expected to cause bodily injury or property damage."). For additional discussion of the application of exclusion provisions, see *infra*, Section II.D.2.

[5] It appears that the breach of contract claim can constitute a covered occurrence, though only to the extent that the fact-finder ultimately determines that the breach was caused by something other than an intentional act. *See Consol. Planning & Dev., Inc. v. Am. Nat'l Fire Ins. Co.*, 270 Ga. App. 8, 9-11 (2004) (stating, rather definitively, that "[o]ccurrence does not mean a breach of contract, fraud, or breach of warranty from the failure to disclose material information," but limiting this statement to the facts at hand, where there had not been a finding of negligence in the underlying action). Because of the context of the *Consol. Planning* case, as well as the

6

claims remain, as they potentially allege an occurrence under the coverage provision. Indeed, Claxton Sr.'s testimony – that his failure to disclose was a "mistake" of some sort – could arguably be found to constitute gross negligence. And as gross negligence does not require intentionality, it could qualify as an occurrence under the policy. The Court now turns to Allstate's claim that, even if an allegation constitutes an occurrence, certain exclusion provisions in the policy apply to the allegation, such that no coverage – much less a duty to defend – exists under the policy.

### 2. Exclusion Provisions

"Under Georgia law, an insurer seeking to invoke a policy exclusion carries the burden of proving its applicability in a given case." *First Specialty Ins. Corp. v. Flowers*, 284 Ga. App. 543, 544 (2007). "[A]ny exclusion from coverage sought to be invoked by the insurer is to be strictly construed." *Cunningham v. Middle Ga. Mut. Ins. Co.*, 268 Ga. App. 181, 185 (2004).

Allstate urges that both policies' "business activities" exclusions apply to all of Harkleroad's claims against the Claxtons due to the nature of the underlying allegations. Doc. # 37-2 at 15-17.

Neither party alleges that the business activities exclusions are ambiguous. When the language in an insurance policy provision is clear, the provision "is interpreted according to its plain language and express terms, just as any other contract." *Alewine v. Horace Mann Ins.*

---

case it cited (*Hall County*, 262 Ga. App. at 813, where the court held that the underlying acts constituted fraud, and not mere negligence), this Court declines to treat the *Consol. Planning* court's statement as a rule that a breach of contract can never constitute an occurrence.

*Co.*, 197 Ga. App. 479, 480 (1990). The words used in the provision are to be given their usual and common significance and are to be construed in their ordinary meaning. *Nat'l Union Fire Ins. Co. v. Prestige Helicopters*, 217 Ga. App. 375, 376-77 (1995).

In this case, the Landlords Policy excludes from coverage any property damage "arising out of the past or present business activities of an insured person," and the policy defines "business" broadly, as "any full or part-time activity of any kind engaged in for economic gain." Doc. # 37-5 at 4, 25-26.

The Umbrella Policy excludes from coverage "any occurrence arising out of a business or business property," and defines "business" as "any full or part-time activity of any kind engaged in for economic gain." Doc. # 37-6 at 14, 18.

In opposing the application of this exclusion, Defendants cite to three Georgia Court of Appeals cases where the court, in determining the proper application of the "business pursuits" exceptions at issue in those cases, focused on whether the alleged "business pursuit" fell within the nature of the insured's usual or primary business. *See Larson v. Ga. Farm Bureau Mut. Ins. Co.*, 238 Ga. App. 674 (1999); *Brown v. Peninsular Fire Ins. Co.*, 171 Ga. App. 507 (1984); *S. Guar. Ins. Co. v. Duncan*, 131 Ga. App. 761 (1974). Defendants urge that here the "flipping" of a house (that is, the purchase and rapid resale) did not qualify as part of the Claxtons' usual or primary business. Defendants' reliance on the analysis applied in *Larson*, *Brown*, and *Duncan* is misplaced, however. The narrow scope of the exceptions in those cases was attributable to the fact that the policies defined "business" in a way that focused on an insured's occupation, trade, or profession, which the court interpreted as one's

principal, customary, or usual work or commercial activity. As a result, the court focused, in those cases, on whether the act at issue was within the nature of the insured's principal business. Here, on the other hand, "business" has been defined much more broadly by the policies as "*any* full *or part-time* activity *of any kind* engaged in for economic gain." Doc. # 37-5 at 4; 37-6 at 14 (emphasis added). Thus, the *Larson*, *Brown*, and *Duncan* courts' analyses in those cases are inapplicable here.[6]

As the purchase and resale of the investment property here was an activity that the Claxtons engaged in for economic gain, *see* doc. # 40 at 32-33 (Claxton Sr. testifies that the house was purchased specifically to resell for profit), the Court finds that the sale of the house to Harkleroad qualifies as a business activity, and therefore the policies are inapplicable to Harkleroad's claims based on the sale.

Thus, in addition to the fact that most of the claims espoused by Harkleroad do not constituted covered "occurrences" under the policies, all of the claims are excluded from coverage, as they are based on activity related to and arising out of the Claxtons' business and business activities as defined by the policy. It is thus unnecessary for the Court to examine the other exclusion provisions cited by Allstate.

For the foregoing reasons, Allstate's motion for summary judgment, doc. # 37, is **GRANTED**, and the Court hereby declares that Allstate is under no duty to defend or indemnify the Claxtons on any of the claims asserted against them by Harkleroad in the underlying action.

This day of 24 May 2010.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[6] Even if the narrow interpretation in those cases were to apply, the Court finds that, similar to the *Larson* case, the activity here *was* within the nature of the insureds' usual business. The Claxtons' usual business consisted of buying investment property for profit – typically, for rental income. Although "flipping" a house may not be identical to renting out a house, there is a logical nexus between the two. *See Larson*, 238 Ga. App. at 675.

8